United States District Court
Southern District of Texas
**ENTERED**
September 02, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| FRED GREGORY | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:15-CV-113 |
| | § | |
| ALLSTATE INSURANCE COMPANY, | § | |
| *et al.* | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' The Allstate Corporation, and Allstate Insurance Company (collectively, "Allstate") Amended Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion"). Dkt. 11. After considering the Motion, the response, all relevant filings, and the applicable law, the Court **GRANTS** Defendants' Motion, for the reasons set forth below.

### BACKGROUND

The factual background of this line of cases is a lengthy and convoluted one, commencing in 1999 and continuing to the present day. In lieu of reciting this complicated history, the Court incorporates by reference the recitation of facts set forth in *Romero v. Allstate Ins. Co.*, 1 F.Supp.3d 319, 331–58 (E.D. Pa. Feb. 27, 2014).

With that caveat aside, the present Motion nonetheless requires a brief review of the core facts giving rise to this matter. This case revolves around Allstate's

announcement and implementation of its Preparing for the Future Group Reorganization Program ("the Program"). Prior to November 1999, the majority of Allstate's captive agency force acted as employee agents under either an R830 or an R1500 contract and were entitled to a wide range of company-sponsored health, welfare, and retirement benefits. On November 10, 1999, Allstate announced the Program by noting that, as part of a new business model, it was reorganizing its entire captive agency force into a single exclusive agency independent contractor program. With few exceptions, Allstate terminated the employment contracts of the 6,200–plus R830 and R1500 employee agents effective no later than June 30, 2000.

In connection with the termination of the R830 and R1500 employment contracts, Allstate offered the agents working under those contracts four options. The first three options were conditioned upon the agents' agreement to execute a release of claims, while the fourth option did not. The first "release-based" option was the "EA Option." According to the Program Information Booklet, this option would allow the agent to enter into an R3001C or R3001S Agreement, thereby converting the agent from an employee to an Exclusive Agent ("EA") independent contractor. The agent would then be entitled to all of the benefits and requirements of that contract, including increased renewal commissions, a conversion bonus, earlier transferability in the agent's book of business, debt forgiveness, and reimbursement for moving expenses if necessary. The R3001C/S contract, however, did not entitle agents to the same employee benefits.

The second option was the "Sale Option." This option also permitted an agent to enter into an R3001C/S Agreement with Allstate, thus converting the agent to an EA

2

independent contractor. In turn, the agent would receive a "conversion bonus" and Allstate would forgive any advances owed, assume certain lease and advertising obligations the agent incurred as an employee agent, and permit the agent, after thirty days' service as an EA, to sell his or her book of business written while an R830 or R1500 agent. This option also required the agent to sign a release.

The third option was the "Enhanced Severance Option." Under this option, Allstate would pay the agent "enhanced" severance equal to one year's pay based on the greater of 1997 or 1998 total compensation, forgive debt and/or expenses that Allstate had advanced to the agent, and relieve the agent of certain lease and advertising obligations incurred as an R830 or R1500 agent. This option was unavailable unless the agent signed a release.

The final option was the "Base Severance Option." If an agent elected this option, then Allstate paid him or her up to thirteen weeks of pay. The agent electing this option did not need to enter into a release and could retain any and all claims.

Plaintiff Fred Gregory ("Gregory") chose the Sale Option, and signed the release in 2000. The Release was three pages long, including a signature page. By signing the Release and Waiver Provision, the agent agreed to waive any and all claims against Allstate connected with the termination of the agent's employment.[1]

---

[1] The Release stated: "In return for the consideration that I am receiving under the Program, I hereby release, waive, and forever discharge Allstate Insurance Company, its agents, parent, subsidiaries, affiliates, employees, officers, shareholders, successors, assigns, benefits plans, plan administrators, representatives, trustees and plan agents ("Allstate"), from any and all liability, actions, charges, causes of action, demands, damages, entitlements or claims for relief or remuneration of any kind whatsoever, whether known or unknown, or whether previously

3

Several employee agents subject to this Program brought age discrimination charges against Allstate with the Equal Employment Opportunity Commission ("EEOC").[2] Subsequently two federal cases against Allstate were initiated and consolidated: *Romero v. Allstate Ins. Co.*, 1 F. Supp. 3d 319 (E.D. Pa. 2014).

The *Romero* litigation continues to this day, and its history is long. Of note here, on October 6, 2014, the *Romero* court denied plaintiffs' motion for class certification on the issue of the validity of the release. *See Romero v. Allstate Ins. Co.*, 52 F. Supp. 3d, 715, 729, 734, 736 (E.D. Pa. 2014). On December 22, 2014, the *Romero* court issued an order staying the statutes of limitations. *See* Dkt. 8-4, p. 11. On March 2, 2015, the *Romero* court held that the denial of class certification caused all applicable statutes of limitations to resume for all putative, absent class members.[3] *See* Dkt. 8-4, p. 13.

---

asserted or unasserted, stated or unstated, arising out of, connected with, or related to, my employment and/or the termination of my employment and my R830 or R1500 Agent Agreement with Allstate, or my transition to independent contractor status, including, but not limited to, all matters in law, in equity, in contract, or in tort, or pursuant to statute, including any claim for age or other types of discrimination prohibited under the Age Discrimination in Employment Act of 1967, Title VII of the Civil Rights Act of 1964, the Americans With Disabilities Act, the Employee Retirement Income Security Act ("ERISA"), the Illinois Human Rights Act, and the West Virginia Human Rights Act as those acts have been amended, or any other federal, state, or local law or ordinance or the common law. I further agree that if any claim is made in my behalf with respect to any matter released and waived above, I hereby waive any rights I may have with respect thereto and agree not to take any payments or other benefits from such claim. I understand that this release and waiver does not apply to any future claims that may arise after I sign this Release or to any benefits to which I am entitled in accordance with any Allstate plan subject to ERISA by virtue of my employment with Allstate prior to my employment termination date."
[2] Gregory did not file charges with the EEOC.
[3] The absent class members include Gregory.

4



## PROCEDURAL HISTORY

On May 15, 2015, fifteen years after signing the Release, Gregory filed the instant suit. *See* Dkt. 1. On September 24, 2015, Gregory filed his First Amended Complaint and nonsuited Lynda Hill. *See* Dkts. 9, 10. Next, Gregory withdrew his allegation that he filed EEOC charges in connection with the Preparing for the Future Program. *See* Dkt. 9. The First Amended Complaint sets fourth five counts.[4] *See id.* Count I seeks a declaratory judgment. *See id.*, ¶¶ 73-82. Count II alleges claims under ERISA. *See Id.*, ¶¶ 83-89. Count III alleges claims under the ADEA. *See id.*, ¶¶ 89-96. Count IV asserts

---

[4] Count I seeks a declaratory judgment declaring the Release invalid under Section 510 of the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1140, the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 623, and the common law. *See* Dkt. 9, ¶¶ 73-82. Count II alleged claims of interference with employment and retaliation in violation of Section 510 of ERISA with respect to Gregory's attainment and receipt of pensions and benefits under various employee benefit plans. *See* Dkt. 9, ¶¶ 83-89. Count III claims "Discriminatory Termination and Retaliation in Violation of Section 623 of the ADEA." *See* Dkt. 9, ¶¶ 89-96. Count IV asserts a claim for breach of the R830 contract, which governed the employment relationship between Allstate and Gregory. *See* Dkt. 9, ¶¶ 97-103. Count V asserts a claim for breach of an alleged fiduciary duty. *See* Dkt. 9, ¶¶ 104-108.

a state law breach of contract claim, and Count V asserts a state law breach of fiduciary duty claim. *See id.*, ¶¶ 97-108.

Initially, Allstate moved to dismiss Gregory's claims made in the Original Complaint (Dkt. 1). *See* Dkt. 8. On September 24, 2015, Gregory filed a First Amended Complaint. Dkt. 9. Again, Allstate moved to dismiss Gregory's claims. Dkt. 11.

## RULE 12(B)(6) STANDARD OF REVIEW

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied sub nom. Cloud v. United States*, 536 U.S. 960, 122 S. Ct. 2665, 153 L. Ed. 2d 839 (2002).

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 127 S. Ct. at 1965). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 127 S. Ct. at 1965). "Where a complaint pleads facts that are 'merely

6

consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Twombly*, 127 S. Ct. at 1966). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *See Ramming*, 281 F.3d at 161. When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## ANALYSIS

In its Motion to Dismiss, Allstate asserts, *inter alia*, that Gregory's: (1) ERISA claims are barred by a two-year statute of limitations; (2) ADEA claims fail because he failed to file any charges with the EEOC; (3) state law claims for breach-of-contract and breach-of-fiduciary duty are barred by a four-year statute of limitations; and (4) Declaratory Judgment claim fails because he fails to assert a plausible and independent cause of action. *See* Dkt. 11. The Court addresses each argument separately.

**A. ERISA Claims**

The Court first addresses Gregory's ERISA claims. Allstate asserts that these claims fail as a matter of law because they are barred by a two-year statute of limitations.[5] *See* Dkt. 11, p. 14. In his response, Gregory alleges that his ERISA claims

---

[5] The Court notes that Allstate also asserts Gregory's ERISA claims fail because he ratified the release. Under federal common law, a party ratifies a contract by failing to return or offer to

7

are not barred by the two-year statute of limitations because the statute of limitations began running on March 1, 2000—the date "[Gregory] transitioned, pursuant to the 'Final Approval Request' ", rather than November 10, 1999—the date he received notice that his employment under the R830 agreement would terminate. *See* Dkt. 23, p. 3. Gregory argues that his ERISA claims are not barred because, "One year and 151 days elapsed between March 1, 2000, the date Plaintiff yielded to the adverse action, and the filing of the original *Romero* Complaint on August 1, 2001. Seventy-seven days elapsed between the *Romero* court's denial of class certification on October 6, 2014, and that court's December 22, 2014 Order staying the running of the statutes of limitations. The statute of limitations resumed on March 2, 2015 and Plaintiff's Complaint was filed on March 15, 2015, sixty-three days before the running of the statute of limitations on July 18, 2015." *Id.* Gregory cites no authority, nor can the Court find any, in the briefing or at the oral hearing to support his proposition. Therefore, the Court finds this argument is without merit.

Section 510 of ERISA does not provide a statute of limitations. Thus, the Court must "borrow the statute of limitations from the most closely analogous [forum] state law." *Lopez ex rel. Gutierrez v. Premium Auto Acceptance Corp.*, 389 F. 3d 504, 506-

---

return the consideration received for signing the contract. *See Faris v. Williams WPC-I, Inc.*, 332 F.3d 316, 323 (5th Cir. 2003) (holding that plaintiff ratified the release by signing it and "not tender[ing] back the consideration"). In exchange for signing the Release, Allstate allowed Gregory to become an independent contractor for the purpose of accruing and selling an economic interest in his book of business. *See* Dkt. 11, p. 2. Gregory failed to return or offer to return this consideration. *See id.* at 9. Accordingly, Gregory ratified the release, and waived his ERISA claims as a matter of law. However, without ruling on the ratification issue, the Court's decision on Allstate's motion remains the same.

07 (5th Cir. 2004). The Fifth Circuit has held that Texas' two-year statute of limitations for wrongful discharge and employment discrimination applies to claims under Section 510 of ERISA. *Id.* at 507. While Texas state law provides the statute of limitations, federal common law governs the date on which the statute begins to run, which for Section 510 claims is when the plaintiff received notice of termination. *See Smith v. Houston Pilots,* No. 1300565, 2014 WL 3534684, at 7 (S.D. Tex. July 16, 2014) (concluding that plaintiff's section 510 claim accrued upon notification that his membership was terminated)). For purposes of Gregory's Section 510 claims, the statute of limitations began to run when Gregory received his notice of termination. *See Jakimas v. Hoffmann-La Roche*, Inc., 485 F.3d 770, 782 (3d Cir. 2007). Here, the Court finds that Gregory received notice that his employment under the R830 agreement would terminate on November 10, 1999. *See* Dkt. 11, p. 15.

On August 1, 2001, following the passage of one year and 265 days, the *Romero* Complaint was filed, under which Gregory was an eligible class member, thereby tolling the statute of limitations. On October 6, 2014, the *Romero* court denied class certification with respect to Gregory's challenges to the Complaint, but, notably, did not address the running of the statute of limitations as to the substantive claims of the non-party, former employee agents of Allstate. Shortly thereafter, on November 7, 2014, the *Romero* Plaintiffs filed a motion seeking clarification from the *Romero* court on this point. By way of Order dated December 11, 2014, the Court then explained that the October 6, 2014 Order restarted the running of the statute of limitations for any current or former employee-agent of Allstate who wanted to challenge the validity of the Release in order

9

to pursue substantive claims. On December 22, 2014, the *Romero* Plaintiffs filed a Motion for Reconsideration of the Court's ruling. During the pendency of that Motion, the *Romero* court put a stay in place on the statute of limitations. Finally, on January 6, 2015, the *Romero* court confirmed that the October 6, 2014 Order did, in fact, recommence the running of the statute of limitations because employee agents were put on clear notice that their rights were no longer protected by the class, but held that the stay would remain in place until March 2, 2015. On May 15, 2015, Gregory filed his Complaint.

Under purely mathematical calculations, Roberts' ERISA § 510 claims are indeed time-barred. As noted above, one year and 265 days passed from the day Gregory was put on notice about the termination of his contract. The statute of limitations then resumed running on October 6, 2014, when the *Romero* court denied class certification as to the Release issues. Thereafter, another seventy-seven days elapsed between class certification denial on October 6, 2014 and the *Romero* court's December 22, 2014 Order staying the running of the statute of limitations, making it a total lapse of one year and 342 days. Subsequently, another seventy-four days elapsed between the resumption of the statute of limitations on March 2, 2015, and the filing of Gregory's Complaint on May 15, 2015, for a total of two years and fifty-one days—fifty-one days past the expiration of the statute of limitations. Accordingly, Gregory's ERISA claims are barred because he

filed them more than two years after he received notice that his employment under the R830 contract would terminate.[6]

### B. ADEA Claims

Gregory also alleges claims under the ADEA. *See* Dkt. 9, ¶ 94-95. Gregory asserts that the termination of his R830 contract with Allstate constituted age discrimination. *Id.* Additionally, Gregory alleges that Allstate committed retaliation by conditioning receipt of benefits under the Program on the signing of the Release and by terminating the agency relationship if an agency declined to sign the Release. *Id.* Allstate contends that Gregory's claims under the ADEA fail as a matter of law because he did not file charges with the EEOC. *See* Dkt. 11, p. 17.

An employee asserting claims for discrimination against their employer must exhaust all administrate remedies before pursuing claims in federal court. *See Johnson v. Pointe Coupee Parish Police Jury,* 261 Fed. App'x 668, 670 (5th Cir. 2008) (affirming district court's dismissal of plaintiff's ADEA claims because plaintiff "failed to exhaust his administrative remedy when he did not file an age discrimination claim with the

---

[6] The Court notes that Gregory's ERISA claims are time-barred regardless of any tolling of the statute of limitations that occurred by virtue of the *Romero* litigation. The statute of limitations tolled, if at all, on two separate occasions. The first period lasted approximately thirteen years–from the filing of the original *Romero* complaint on August 1, 2001, to the denial of class certification on October 6, 2014. *See Romero v. Allstate Ins. Co.*, 52 F. Supp. 3d 715 (E.D. Pa. 2014). The second period lasted seventy (70) days: from December 22, 2014 to March 2, 2015. *See* 12.22.14 Order, *Romero v. Allstate Ins. Co.*, App. 3, Tab I, at 1 (ordering resumption of tolling). Considering these two tolling periods, more than two years – specifically 2 years and 51 days–elapsed between the announcement of the Program and the Gregory's filing of the Original Complaint. One year and 265 days elapsed between November 10, 1999–the date Plaintiff received notice his employment contract was being terminated (*See* Dkt. 9, ¶¶ 41, 49-51)–and the filing of the original *Romero* complaint on August 1, 2001 (*See Romero*, 1 F. Supp. 3d at 358). Seventy-seven days elapsed between the resumption of the running of the statute of limitations on March 2, 2015, and the filing of Gregory's Original Complaint on May 15, 2015.

EEOC")). Here, Gregory failed to file any claims with the EEOC prior to filing this suit. Accordingly, because Gregory failed to exhaust the applicable administrative remedies, the Court finds that Gregory's ADEA claims for retaliation and age discrimination fail as a matter of law.

### C. State Law Claims

Gregory alleges that Allstate breached the R830 contract and an alleged fiduciary duty of good faith and fair dealing when Allstate terminated his employment contract. *See* Dkt. 9, ¶ 102-03, 106-07. Allstate asserts that the applicable statute of limitations bar Gregory from bringing these claims.[7] *See* Dkt. 11, p. 18-19.

In Texas, the statute of limitations for breach-of-contract and breach-of-fiduciary duty claims is four years. *See* TEX. CIV. PRAC. & REM. CODE §§ 16.004(5), 16.051. Additionally, in Texas, the filing of a class action suit in federal court does not toll the statute of limitations for the purported state-law claims. *See Newby v. Enron Corp.*, 542 F.3d 463, 472 (5th Cir. 2008) (observing that "Texas courts have not...allow[ed] a federal class action to toll a statute of limitations") (citing *Bell v. Showa Denko K.K.*, 899 S.W.2d 749, 757-58 (Tex. App.–Amarillo 1995, writ denied))). Allstate terminated Gregory's R830 contract on November 10, 1999. *See* Dkt. 11, p. 2. On May 15, 2015,

---

[7] The Court notes that Gregory's state-law claims are barred for the additional reasons that Gregory ratified the release and was an at-will employee. *See First Tex. Savings Ass'n of Dallas v. Dicker Ctr., Inc.*, 631 S.W.2d 179, 186 (Tex. App. – Tyler 1982, no writ) (concluding that plaintiff ratified the release by "accepting the benefits" and "elect[ing] to retain the benefits")); *See also Bowser v. McDonald's Corp.*, 714 F. Supp. 839, 841-42 (S.D. Tex. 1989) (applying Texas law, and holding that in the absence of a "written contract specifically stating that there is no right to termination at will," plaintiff could not prevail on breach-of-employment-contract claims.); *See also City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000) (declining to "impose a common law duty of good faith and fair dealing because such a contractual limitations would afford more rights to the plaintiffs than at-will employees possess.").

Gregory filed his Original Complaint. *See* Dkt. 1. More than fifteen years elapsed between Gregory's termination and the filling of the Original Complaint. *Id.* Accordingly, Gregory's breach-of-contract and breach-of-fiduciary duty claims are barred by Texas' four-year statute of limitations.

### D. Declaratory Judgment

Gregory also seeks a declaratory judgment that the release is invalid under ERISA, the ADEA, and the common law. *See* Dkt. 9, Pl.'s Am. Compl., ¶ 73-82. Allstate has responded that absent a case or controversy, Gregory has no jurisdiction for such a judgment. *See* Dkt. 11, p. 22-23. The Court agrees.

It is well-settled that the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, does not grant federal jurisdiction, but instead depends on the existence of an "actual controversy." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40, 57 S. Ct. 461, 81 L. Ed. 617 (1937); *Okpalobi v. Foster*, 244 F.3d 405, 434 (5th Cir. 2001) (Higginbothom, J., concurring). Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The federal Declaratory Judgment Act [however] ... does not create a substantive cause of action ... [it] is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law." *Reid v. Aransas County*, 805 F. Supp. 2d 322, 338 (S.D. Tex. 2011). "Thus, a plaintiff cannot use the Declaratory Judgment Act to create a private right of action where none exists."

13

*Id.* In order for a court to grant declaratory relief, there must be a "substantial and continuing controversy between two adverse parties" and "a substantial likelihood that [the plaintiff] will suffer injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003). For the reasons set forth above, Gregory does not present a plausible claim for relief. Thus, because there is no actual controversy pending, the Court finds that it lacks jurisdiction to address Gregory's request for a declaratory judgment.

## CONCLUSION

After careful consideration of the pleadings, the Motion to Dismiss, the record in this case, and the arguments of the parties, the Court **GRANTS** Allstate's Motion to Dismiss (Dkt. 11). Accordingly, Gregory's claims are **DISMISSED WITH PREJUDICE**, because further amendment would be futile.

**IT IS SO ORDERED.**

**Final judgment will be entered separately.**

SIGNED AT GALVESTON, TEXAS, on September 2 2016.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE